IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                       No. CR 08-2972 JB

JOSUE TARANGO,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Josue Tarango's request at the Status Conference held on March 18, 2009 that the United States produce the identities of its confidential witnesses, FBI 302s pertaining to those witnesses, and imprisonment material pertaining to the witnesses. The primary issue is whether the Court should compel the United States to produce its witness lists and related information to Tarango so that he can adequately prepare for his defense. Because Tarango is not entitled to pretrial discovery of the confidential witnesses' identities or their FBI 302s, the Court will not order the United States to produce that information. Although Tarango is not entitled, pre-trial, to the information he seeks, the United States has agreed to disclose them three days before the trial, and the Court will facilitate that compromise.

## BACKGROUND

Tarango, who is charged with possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (cocaine) and § 841(b)(1)(A) (methamphetamine), requested a status conference to discuss certain issues pertaining to his upcoming trial. At the status conference, Tarango noted that the United States has confidential informants whom it plans to use as witnesses during the trial. Tarango asks the Court to order the United States to produce the

identities of these confidential witnesses so that Tarango can question them and otherwise review the statements that they have made up to this point.  See Transcript of Status Conference at 4:16-25 (taken March 18, 2009)(Fisher)("Tr.").[1]  Tarango believes that he is entitled to the information he seeks and that the United States should be compelled to produce it.  See id. at 18:19-20 (Fisher).

The United States argued at the hearing that, while it is usually open to producing witness lists, it believes this case calls for special caution.  See id. at 8:3-10 (Swainston).  The United States expressed particular concern that, given Tarango's background, the confidential witnesses would be placed in danger and might not be willing to testify if the United States revealed their identities. See id. (Swainston).  The United States noted that Tarango and his brother, Danny Tarango,[2] have been known to take measures to intimidate potential witnesses.  See id. at 8:8-10 (Swainston).  The United States stated that it possessed wiretapped conversations in which Danny Tarango bragged about burning a car that belonged to a witness who was to testify against Tarango in another matter. See id. at 5:15-25 (Swainston).

The United States also argued that it was not sure who it was going to use as witnesses.  See id. at 6:20-20-22 (Swainston).  The United States has a list of people who are able to testify and some FBI 302s, but it has not determined whom of these potential witnesses it will call.  See id. at 6:23-7:2 (Swainston).  Because the United States has not yet decided who will testify, and because

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[2] Danny Tarango was in charge of a sophisticated drug trafficking organization that operated in Northern New Mexico and the surrounding area.  Law enforcement executed a warrant on a residence where Danny and Josh Tarango had been present.  Danny Tarango ultimately evaded capture and fled to Mexico.  See Tr. at 8:8-11 (Swainston). The United States hopes the confidential informants and/or witnesses that are the subject of Tarango's request for disclosure will testify that Tarango was living at the house where the warrant was executed, and that he was not merely spending the night there.

the United States is concerned about the difficulty of getting anyone to testify against the Tarangos, the United States argued that it should not be required to disclose the identities of its confidential informants and potential witnesses before trial.  See id. at 8:1-18 (Swainston).

By way of a compromise, the United States offered to allow Tarango's attorney, Mr. Charles Fisher, to interview certain fact witnesses on the weekend before trial after the United States has had the opportunity to secrete those witnesses.  See id. at 27:1-4 (Swainston).  The United States also represented that it would be open to an arrangement with Mr. Fisher to provide the FBI 302s in a time place and manner that the Court approved for attorney's-eyes only review.  See id. at 16:4-13.

## LAW REGARDING THE DISCLOSURE OF CONFIDENTIAL WITNESSES IN CRIMINAL CASES

Rule 16 of the Federal Rules of Criminal Procedure sets forth the general principles governing discovery in criminal cases.  Rule 16 places some disclosure obligations on the United States, but it does not require disclosure of witness lists.  Indeed, the rule is silent regarding witness lists.  See 25 J. Moore, Moore's Federal Practice § 616.02[3][a], at 616-15 (3d ed. 2008).  Although the Supreme Court of the United States recommended an amendment to rule 16 to require the disclosure of witness lists before trial, Congress ultimately rejected such a requirement "based on a fear that requiring disclosure of such lists would discourage witnesses from testifying or result in the influencing of testimony."   25 J. Moore's, supra § 616.02[3][a], at 616-15 (citing H.R. Conference Rep. No. 414, 94th Cong., 1st Sess. 11-12 (1975)).

The United States Court of Appeals for the Tenth Circuit has held: "It is settled law in this circuit that, in the absence of a statutory or constitutional requirement, . . . there [is no] requirement that the government disclose its witnesses in any manner, except in a case where trial is for treason or other capital offense."  United States v. Nevels, 490 F.3d 800, 803 (10th Cir. 2007)(quoting

United States v. Baca, 494 F.2d 424, 427 (10th Cir. 1974))(ellipsis in United States v. Nevels).

Moreover, the Tenth Circuit has explained that, "[i]n noncapital cases . . . there is no constitutional

right to the pretrial disclosure of witnesses." United States v. Russell, 109 F.3d 1503, 1510 (10th

Cir. 1997). See Weatherford v. Bursey, 429 U.S. at 559. In Weatherford v. Bursey, the Supreme

Court explained:

> It does not follow from the prohibition against concealing evidence favorable to the
> accused that the prosecution must reveal before trial the names of all witnesses who
> will testify unfavorably. There is no general constitutional right to discovery in a
> criminal case, and *Brady* did not create one; as the [Supreme] Court wrote recently,
> "the Due Process Clause has little to say regarding the amount of discovery which
> the parties must be afforded. . . ." *Wardius v. Oregon*, 412 U.S. 470, 474 . . . (1973).

429 U.S. at 559.

Regarding statutory requirements that the United States disclose witnesses, the Tenth Circuit

in United States v. Nevels stated:

> No statute or rule, moreover, requires pretrial disclosure of non-expert witnesses.
> Federal Rule of Criminal Procedure 16 provides limited discovery obligations on
> behalf of prosecutors. But it does not entitle defendants to discover the identity of
> government non-expert witnesses before trial. *Russell*, 109 F.3d at 1510. Under Rule
> 16(a)(2), a defendant may only discover statements made by prospective government
> witnesses as provided under the Jencks Act, 18 U.S.C. § 3500 (1976). The Jencks
> Act entitles a federal criminal defendant to obtain any pretrial statement and report
> made by a government witness, but only after the witness has testified on direct
> examination at trial.

490 F.3d at 803.

## **ANALYSIS**

Contrary to what Tarango has argued, he is not entitled to pretrial discovery of the identities

of the United States' fact witnesses in this case. Tenth Circuit case law establishes that, absent a

constitutional or statutory requirement, the United States has no duty to disclose its witness lists to

the defendant before trial. See United States v. Nevels, 490 F.3d at 803. This case does not

-4-

implicate any statutory or constitutional provisions that would compel the United States to disclose

the witness' identities or their FBI 302s.  Because Tarango is not entitled to the information he

seeks, the Court will not order the United States to produce it.  The Court believes the compromise

that the United States offered Tarango at the status conference is suitable and, if Tarango wishes to

have pretrial access to the confidential witnesses, he will have to do so on the terms the United

States has offered.

## I.      TARANGO IS NOT ENTITLED TO THE INFORMATION HE SEEKS.

"In noncapital cases . . . there is no constitutional right to the pretrial disclosure of

witnesses."  United States v. Russell, 109 F.3d 1503, 1510 (10th Cir. 1997).  See Weatherford v.

Bursey, 429 U.S. 545, 559 (1977).  In Weatherford v. Bursey, the Supreme Court stated:

> It does not follow from the prohibition against concealing evidence favorable to the
> accused that the prosecution must reveal before trial the names of all witnesses who
> will testify unfavorably.  There is no general constitutional right to discovery in a
> criminal case, and *Brady* did not create one; as the Court wrote recently, "the Due
> Process Clause has little to say regarding the amount of discovery which the parties
> must be afforded. . . ."  *Wardius v. Oregon*, 412 U.S. 470, 474 . . . (1973).

429 U.S. at 559.

Regarding statutory requirements that the United States disclose witnesses, the Tenth Circuit

in United States v. Nevels stated:

> No statute or rule, moreover, requires pretrial disclosure of non-expert witnesses.
> Federal Rule of Criminal Procedure 16 provides limited discovery obligations on
> behalf of prosecutors. But it does not entitle defendants to discover the identity of
> government non-expert witnesses before trial. *Russell*, 109 F.3d at 1510. Under Rule
> 16(a)(2), a defendant may only discover statements made by prospective government
> witnesses as provided under the Jencks Act, 18 U.S.C. § 3500 (1976). The Jencks
> Act entitles a federal criminal defendant to obtain any pretrial statement and report
> made by a government witness, but only after the witness has testified on direct
> examination at trial.

490 F.3d at 803.

In light of rule 16, the applicable statutes, and Tenth Circuit and Supreme Court case law,

Tarango must adhere to 18 U.S.C. § 3500, which would entitle him to obtain pretrial statements and reports that the United States' witnesses have made after those witnesses have testified on direct examination at trial. He is a non-capital criminal defendant, and he has not shown that his lack of access to the information he seeks gives rise to a violation of his constitutional rights. It is true that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). Nevertheless, Tarango has not argued that the United States is withholding favorable or exculpatory evidence from him. The tenor of the hearing suggests the opposite: the confidential witnesses are potentially damaging to Tarango, and Tarango consequently might be motivated to intimidate or harm those witnesses. If, at a later point, Tarango believes he has developed information suggesting the United States is withholding the identity of a witness who might have exculpatory or favorable evidence, he can re-approach the Court and raise the issue.

Tarango cites Roviaro v. United States, 353 U.S. 53 (1957), and United States v. Mendoza, 236 Fed.Appx. 371 (10th Cir. 2007)(unpublished), to support his contention that he is entitled to the witness' identities and to their FBI 302s. Tarango's reliance on those two cases is not without merit. The Supreme Court in Roviaro v. United States discussed the "informer's privilege," by which the prosecution is entitled to withhold from disclosure the identities of informants who furnish information to law enforcement about violations of the law. See 353 U.S. at 59. The policies underlying the privilege are "furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." Id. Despite the policy of encouraging citizens to

-6-

report crime to law enforcement officials, the Supreme Court has recognized that, in some circumstances, the privilege must give way.  Specifically, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."

In Mendoza v. United States, the Tenth Circuit cited Roviaro v. United States and reiterated the proposition that, "[w]here the disclosure of an informer's identity is relevant and helpful to an accused's defense or essential to a fair determination of a cause, the privilege gives way and disclosure is required."  236 Fed.Appx. 371, *14.  Tarango therefore has articulated a sound principle of law.  That principle, however, is not applicable under the circumstances of this case.  There is a difference between a confidential informant, whose identity the government often never wants to reveal, and a confidential witness, whose identity will ultimately be revealed to facilitate the witness' testimony at trial and the defendant's opportunity to cross examine that witness.  Tarango will know these witnesses' identities if they become witnesses; the issue is one of timing, not disclosure.

In Roviaro v. United States, a defendant appealed his conviction for violating the Narcotic Drugs Import and Export Act on the grounds that, by refusing to order the prosecution to disclose the identity of an informant who materially aided in facilitating the operation in which the defendant was apprehended, the trial court committed reversible error.  353 U.S. at 54-55.  The "John Doe," whose identity the prosecution refused to reveal, was an informer and special employee whom federal agents had known and on whom they had relied for several years.  Id. at 57.

In the events leading up the arrest of the defendant in Roviaro v. United States, four law enforcement officers met with John Doe and orchestrated a drug buy during which one officer hid in the trunk of John Doe's car and the other officers followed in separate cars as John Doe met the

defendant and bought drugs from the defendant.  See id. at 56-57.  Although the four law enforcement officers involved in the defendant's arrest testified, John Doe did not and the prosecution refused to disclose his identity.  Under those circumstances, the Supreme Court explained:

> The circumstances of this case demonstrate that John Doe's possible testimony was highly relevant and might have been helpful to the defense. So far as petitioner knew, he and John Doe were alone and unobserved during the crucial occurrence for which he was indicted. Unless petitioner waived his constitutional right not to take the stand in his own defense, John Doe was his one material witness. Petitioner's opportunity to cross-examine Police Officer Bryson and Federal Narcotics Agent Durham was hardly a substitute for an opportunity to examine the man who had been nearest to him and took part in the transaction. Doe had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package that he 'transported' from the tree to John Doe's car. The desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide.

Id. at 64-65.

This case does not, on the record before the Court, present a situation analogous to the one in Roviaro v. United States.  The  degree to which the United States' confidential witnesses will be helpful to Tarango's defense, if at all, has not been established.  Indeed, Tarango has not represented that these witnesses are, essentially, his only chance at a defense.  More important, the United States currently contemplates putting the witnesses at issue in this case on the stand to testify against Tarango.  The prosecution in Roviaro v. United States did not use John Doe as a witness.  Rather, the prosecution chose to keep his identity secret throughout the entire proceeding.  Thus, despite John Doe's possible central role to the defendant's case in Roviaro v. United States, the defendant would never have the chance to question him or cast doubt on his guilt by eliciting useful testimony from John Doe.  In this case, Tarango will learn the identities of these witnesses and will have the

chance to question them.  If the United States decides not to call one of its confidential witnesses, and Tarango has a good faith basis for suggesting that this witness not called has exculpatory evidence, Tarango can ask the Court to revisit this issue.

An examination of the policies behind informant privilege and the need to protect some witness' identities in certain criminal cases further illustrates why <u>Roviaro v. United States</u> and cases that follow it do not apply in this setting.  The need to protect the identity of witnesses before a criminal trial furthers some of the same policies as the informant's privilege.  Namely, protecting a witness' identity furthers effective law enforcement by encouraging witnesses to cooperate with law enforcement and give information about criminal violations.  Protecting a witness' identity, however, furthers other paramount goals as well.  Where there is a risk of witness tampering, keeping the identity of witnesses from a defendant helps uphold the integrity of the judicial process by making it more difficult – and ideally, impossible – for a defendant to access and intimidate or otherwise attempt to influence the witness.  Furthermore, it may be more difficult to convince an informant to testify in open court than to secretly supply information that law enforcement can use to develop a case against a defendant.  While the secret informant bears some risk, the secret informant also enjoys the possibility that his conduct will remain unknown to those on whom he is informing.  A trial witness, on the other hand, must normally appear in open court so that the defendant can cross examine him or her.  The witness therefore assumes that the defendant will inevitably be apprised of his or her identity.  Given the increased risks that witness face, the prosecution may, at times, need to take extra measures to protect its witnesses.  Secreting the witness and suppressing his or her identity until trial is an acceptable tactic under such circumstances.

Congress, upon reviewing proposals to amend rule 16 to require the United States to disclose witness lists, contemplated these concerns.  Congress feared that forced disclosure of witness lists

would discourage witnesses from testifying and would inject a risk that some defendants would interfere with testimony.  See J. Moore's supra § 616.02[3][a], at 616-15 (citing H.R. Conference Rep. No. 414, 94th Cong., 1st Sess. 11-12 (1975)).  Accordingly, the Court concludes that the United States is not required to disclose the information Tarango seeks before trial.  The United States is dealing with potential trial witnesses, and it should be able to keep those witness' identities from Tarango before trial to prevent Tarango from tampering, intimidating, harming, or killing those witnesses before trial.  The Court will not order the United States to reveal its witness' identities or disclose those witness' FBI 302s before trial.

## II.    THE UNITED STATES' COMPROMISE OFFER IS SUITABLE AND THE COURT WILL APPROVE OF THE ARRANGEMENT IF TARANGO CHOOSES TO ACCEPT IT.

The United States has offered to give Tarango more than what is required.  Specifically, the United States has agreed to allow Tarango's attorney, Mr. Fisher, to access certain witnesses on the weekend before trial, after the United States has been able to secrete those witnesses.  The United States also tentatively offered to turn over the identities of witnesses and other information for attorney's-eyes only review.  This arrangements would be suitable if both parties can come to an agreement on the details.  If the United States agrees to disclose identities and documents under attorney's-eyes only, such as the FBI 302s before trial, the Court will require Mr. Fisher to file representations with the Court that he will not divulge the information that the United States turns over – to the defendant or anyone else – until the United States agrees that doing so is appropriate or until the United States would otherwise be required to do so.  Furthermore, if Mr. Fisher wishes to disclose that information to his investigator, and the United States agrees that he may do so, the Court will require that the investigator file something with the Court subjecting the investigator to the Court's contempt power and agreeing not to divulge the information.  Otherwise, the Court will

-10-

allow the parties to create their own arrangement.  The Court reiterates, however, that it will not order the United States to disclose the information Tarango seeks before the trial.

**IT IS ORDERED** that Defendant Josue Tarango's request that the Court order the United States to disclose the identities of its confidential witnesses, FBI 302s, and other information pertaining to those witnesses is denied.

_____
UNITED STATES DISTRICT JUDGE

_Counsel_:

Gregory J. Fouratt
  United States Attorney
Reeve Swainston
  Assistant United States Attorney
Albuquerque, New Mexico

  _Attorneys for the Plaintiff_

Charles Nicholas Fisher
Allison & Fisher
Albuquerque, New Mexico

  _Attorneys for the Defendant_